Marshall, C. J.
 

 Anna L. Dilley filed her petition in the court of common pleas of Butler county to recover for personal injuries received by her while riding in an automobile on the streets of the city of Hamilton in the nighttime, said automobile colliding with a raised platform about six inches above the street level, designed as a platform to aid passengers in boarding street cars and for the greater safety of passengers in safety zones. The platform had been erected on the location of one of the regu
 
 *128
 
 lar safety zones at the street intersection of High ánd Third streets in said city, but had not been fully completed. When completed a concrete pillar or post approximately five feet in height, erected at one end of the platform, would have been lighted with a red light as a warning sign to indicate the presence and location of the platform. On the night of the collision there was no light or warning to indicate the presence or location of the platform, and by reason of the similarity in color between the pillar, the platform, and the street surface, the driver of the auto did not observe it until too late to avoid it. The plaintiff was seriously injured. In the trial court she recovered a judgment, which was affirmed by the Court of Appeals, and the cause was admitted to this court by allowance of motion to certify the record.
 

 The basis of the action and the recovery was Section 3714, General Code, which requires municipal corporations to cause the streets to be kept open, in repair, and free from nuisance. The city has defended on the ground that the ’maintenance of streets and keeping them in' repair constitutes a governmental function, and that there can therefore be no liability on the part of the city for any act of the city or its agents while engaged in improving or repairing the same. It is further urged that the erection of safety zone platforms is in the interest of the public welfare, that the city has a legal right to erect them, and that it is the duty of drivers of vehicles to avoid them. Counsel have cited the former decisions of this court in which it has been ruled that a municipality cannot be held responsible for the negligence of its agents and servants while engaged in the per
 
 *129
 
 formance of a governmental function. With that principle, and with the authorities cited in support of it, this court is still in accord.
 

 Among the cases cited and quoted is that of
 
 Wooster
 
 v.
 
 Arbenz,
 
 116 Ohio St., 281, 156 N. E., 210, 52 A. L. R., 518. In that case, by the unanimous-judgment of this court, it was declared that the agents and servants of the city, while engaged in making repairs and improvements to streets, are performing a governmental function. It was particularly stated in that case, however, that the court was not declaring that any negligence of the city or its agents and servants while engaged in performing that function, resulting in leaving an obstruction amounting to a nuisance on the traveled portions of the highways of a city, might not be the basis of a recovery. In the former decisions of this court absolving municipalities of liability for negligence in the performance of governmental functions, it has not been doubted that such responsibility can be placed upon the municipality by legislative action. More than 75 years ago (Section 63 of an Act to provide for the organization of cities, 50 Ohio Laws, 244) the Ohio Legislature did impose a liability upon municipalities, as now set forth in Section 3714, General Code, and the only real controversy in this case, therefore, is whether the platform with which plaintiff’s machine collided was or was not under all the circumstances a nuisance. This court is dealing only with the controversy which has been presented. It involves no complaint of the existence or location or manner of erection of the platform. We are not deciding or even considering the right of a municipality to establish platforms in
 
 *130
 
 safety zones as appliances to protect pedestrians from the dangers of vehicular traffic at street intersections, as a matter of public policy, or its duty to place lights or other signals thereon as a warning to vehicular traffic, where the streets are otherwise lighted sufficiently to disclose their presence, and we are of the opinion that the pleadings and the evidence in this case do not call for a declaration upon those matters. Our attention has been called to cases decided by courts of other states where cities have not been held responsible for injuries caused by vehicles colliding with such platforms, even though such platforms have not been lighted or other warning signals placed thereon. Those cases have been decided under their peculiar circumstances, where no statute similar to Section 3714 bears upon the duty of the municipality. The record in the instant case discloses that other nearby intersections had platforms which were lighted with red lights, and that the vehicle in which plaintiff was riding had passed such platforms and avoided the same because of the existence of the warning lights. The particular platform where the collision occurred was in an unfinished state, and it was intended to light the same when completed. Lanterns had been hung on the pillar, but that practice had been discontinued a short time before the collision. There were arc. lights at the street intersections which served in some measure to disclose the existence of the platform.' Whether the city’s duty would have been discharged by placing the platforms in the vicinity of the arc lights, without other warning, or by erecting such platforms quite generally throughout the city, or for a long distance on
 
 *131
 
 any single street, cannot properly be determined in this case. It does not appear in this case that snch platforms were established generally throughout the city of Hamilton, or even for long distances on any single street, or this particular street. It does appear that some platforms were lighted, which platforms had just been passed by the driver of the machine in which plaintiff was riding. Whether the driver was misled by finding beacon lights on other platforms, and therefore led to assume that all platforms would be so lighted, has an important bearing upon the case. That was a question of fact for the determination of the jury. The issue made by the pleadings and the evidence was whether or not the unlighted platform, under all the circumstances of the case, constituted a public nuisance.
 

 Under all the authorities, it is the province of the court to define a nuisance and the province of the jury to determine whether the circumstances of the particular case come within the definition of a nuisance. This question was submitted by the court to the jury for its determination as a question of fact. There is both force and logic in the contention that the municipality had a right to determine its policies in protecting pedestrians against the hazards of vehicular traffic, and that raised platforms in safety zones are becoming more and more prevalent upon streets and highways where the traffic is heavy, and there is likewise much force and logic in the general proposition that that which a city establishes pursuant to a sound public policy cannot become a nuisance. The difficulty with that line of argument is that we have to contend with policies affecting conflicting rights. The purpose to be
 
 *132
 
 served by the raised platforms is to make traffic safer for pedestrians. In so doing traffic has been made less safe for vehicles. The difficulties of the problem have been minimized by the fact that the Legislature has declared a policy which is binding upon the courts. The Legislature has declared that streets must be kept open, in repair, and free from nuisance. Any obstruction in the traveled portion of a street or highway may under peculiar circumstances become a nuisance. Raised platforms may become so prevalent in cities that drivers of vehicles will be expected to be constantly on their guard to avoid them. When that time comes the courts may take judicial notice of them, and it may then be stated as a proposition of law that they are perfectly lawful structures and the city owes no obligation to light them or give other warning. Every rule of law must be construed in the light of existing conditions, and, when conditions change, the rule of law must change, otherwise it would become a static, arbitrary rule. At this time and in the light of conditions as shown by this record we are of opinion that it was a jury question and that the question was properly submitted to the jury for its determination. By its rendition of a verdict in plaintiff’s favor the jury must have determined that the street was not then in a reasonably safe condition for public travel. The Court of Appeals did not disturb that finding. This court will not weigh the evidence, and the decision of the lower courts must therefore be affirmed.
 

 Judgment affirmed.
 

 Matthias, Day, and Allen, JJ., concur.
 

 Kinkade and Jones, JJ., dissent.