GABRIS, A MINOR, ET AL., APPELLANTS, *v.* BLAKE ET AL., APPELLEES.

(No. 7981—Decided January 25, 1966.)

Messrs. *Buchanan & Fuller*, for appellants.
Mr. *John C. Young*, city attorney, Mr. *Alba L. Whiteside* and Mr. *James R. Kirk*, for appellee City of Columbus.
Messrs. *Knepper, White, Richards & Miller* and Mr. *Louis E. Gerber*, for appellees Wonder Bakeries, Inc., and Continental Baking Company.

DUFFEY, J. This is an appeal from a judgment of the Columbus Municipal Court. Plaintiffs, appellants herein, brought an action against four defendants. The court sustained a de-

murrer by, and gave judgment to, appellee city of Columbus, on the ground of governmental immunity. The facts are as alleged in the petition.

Findley Avenue and Duncan Street are both residential streets in Columbus, Ohio, that intersect at right angles. On June 10, 1963, Roger Gabris was five years old. That afternoon, he was walking north on Findley Avenue on the west sidewalk. At the corner, to his left, a bakery truck was parked at the south curb line of Duncan Street and within a "bus stop—no parking" area. The child started to cross in the crosswalk and stopped to "peek" around the truck for oncoming traffic. Donald K. Blake, a police officer, was driving a Columbus city police cruiser east on Duncan Street. "The cruiser had a broken right front headlight in such a fashion that a piece of metal strip chrome stuck out to the side of cruiser headlight." The metal strip caught the child as he leaned out to peek. It pierced his left breast, making a hole the size of a "silver dollar," and dragging him some ten feet.

Two bases of liability are urged. (1) Nuisance, in the condition of the vehicle, and (2) negligence in the manner of operating the vehicle. However, both the vehicle itself and its operation were part of a governmental function of the city. It follows that, regardless of fault, the city is immune from all liability unless a statute has imposed liability. The applicable statutes are Section 723.01, Revised Code, relating to nuisances, and Section 701.02, Revised Code, relating to negligence in the operation of motor vehicles.

The city cannot be held liable on the second ground, i. e., for negligent operation of a police cruiser. In *City of Wooster* v. *Arbenz* (1927), 116 Ohio St. 281, 52 A. L. R. 518, the Supreme Court held that there was no statutory liability for mere negligent operation of a vehicle upon the streets where that operation was pursuant to a governmental function. That doctrine was legislatively overruled in large part by the enactment of Section 701.02, Revised Code. That statute imposes liability for negligent operation of vehicles. Unfortunately, the statute expressly excepts negligence of members of the police department. Accordingly, the city is entitled to rely on governmental immunity from liability for the officer's conduct.

The other statutory ground for liability is predicated on Section 723.01, Revised Code, which provides:

"Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of such municipal corporation shall have the care, supervision, and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and shall cause them to be kept open, in repair, and *free from nuisance.*" (Emphasis added.)

All but one of the elements for liability under the statute are alleged and have not really been contested by the city. Roger Gabris was a person using the street and was, therefore, a person for whose benefit the statute was enacted. See *Crisafi* v. *City of Cleveland* (1959), 169 Ohio St. 137. The vehicle was owned and operated by the city. This is sufficient to raise the issue of notice. On notice, compare *City of Cleveland* v. *Amato* (1931), 123 Ohio St. 575. The allegation of the broken headlight and protruding metal strip is hardly very specific, and probably is subject to motion. However, the city has not contested that point, and we consider that, as against a demurrer, it is a sufficient pleading of a dangerously defective condition. The petition also sufficiently alleges that the defective condition was a proximate cause of injury. The age of the child disposes of any question of contributory negligence as a matter of law.

There are two issues. Does the defective condition of the vehicle make it a nuisance, and is it the type of nuisance covered by Section 723.01, Revised Code?

It is apparent that a vehicle can be so defective as to constitute a nuisance. However, in this case, the city contends that "pieces of metal of all shapes and sizes" protrude from vehicles, *i. e.*, mirrors, door handles, etc. It is argued that the fact of a protruding piece of metal is not sufficient.

Attachments such as mirrors, etc., which are reasonably designed and reasonably maintained would not be nuisances. However, if constructed as a shaft, aimed as a spear, and capable of impaling a pedestrian, then we would consider that such an attachment might well constitute a nuisance. In the present case, it was not a mirror or other blunt attachment. It was allegedly a shaft of metal on the side of the vehicle, resulting from

a broken headlight. In our opinion, and again considering that the question is at present only one of the sufficiency of the pleading against demurrer, we believe that an unreasonable risk of injury is inferable on the facts alleged.

The more difficult question is whether a defective vehicle, even though a nuisance, is the kind of nuisance contemplated by the statutory duty under Section 723.01, Revised Code, to keep the streets free from nuisance.

Despite the apparent simplicity of the statutory wording, a leading authority states that a nuisance within the statute is limited to defective conditions "in the actual physical structure of the street or highway." Farrell-Ellis, 3 Ohio Municipal Code, 11 Ed. 448, Section 15.4. The same authority recognizes that this would not be true of an "absolute" nuisance, a distinction which we cannot find in the statute. See Farrell-Ellis, 3 Ohio Municipal Code, 11 Ed. 447, Section 15.3.1 (a) and (b).

Limiting liability to defects in the physical structure would apparently require that an injury result from either a depression in, or some object implanted in, the pavement itself. The doctrines of real property fixtures are not appropriate to, and should not be imported into, the definition of nuisance in Section 723.01, Revised Code. The statutory responsibility for nuisance broadens a municipality's duty beyond that of concern for the mere ability to travel. It imposes a degree of responsibility for *safe* travel. That the statute is concerned with more than merely facilitating physical movement is apparent from the inclusion of parks and other public grounds in the municipality's duties.

The contention as to defects in the physical structure is apparently derived from statements in several Supreme Court cases, and in lower court decisions which purport to follow them. In our opinion, the statements relied upon are dicta and conflict with holdings in other Supreme Court cases.

It was previously noted that the leading case of *City of Wooster* v. *Arbenz* (1927), 116 Ohio St. 281, 52 A. L. R. 518, establishes the doctrine that Section 723.01, Revised Code, does not impose liability for mere negligent operation of a vehicle. That case is also the leading authority for the contention that the statute applies only to defects in the physical structure. In

that case, a city truck collided with the plaintiff's automobile. There was no claim that the truck was defective in any respect. The facts did not require any holding on the question presented here. In addition, the issue presented was whether the truck was being operated in a governmental or proprietary capacity. The specific question was whether the construction of a street improvement was or was not a governmental function. See the *Wooster case, supra*, at 283. That issue did not require any interpretation of the then Section 3714, General Code, now Section 723.01, Revised Code. In the course of a general discussion of the nature of streets in connection with the "proprietary" issue, the court stated that the statute "extends only to damages caused by defects in the streets themselves." See the *Wooster case, supra*, at 290. Considering the factual situation before the court of a nondefective truck which was negligently operated, the court's statement is at most ambiguous on the issue in this case.

In *Wall* v. *City of Cincinnati* (1948), 150 Ohio St. 411, there is a statement in the syllabus indicating that the statute requires a "defective condition in the street itself." In that case, the plaintiff's automobile struck a city truck upon which was mounted a steam cleaner. The petition alleged that a "dense cloud of steam" had completely obscured the truck and unit. The plaintiff drove into the cloud, striking the truck. There was no contention that either the truck or the cleaner was defective. The court stated that "the factual allegations contain nothing tending to show other than a normal operation of the cleaning machinery." See the *Wall case, supra*, at 415. The opinion then concludes with the very carefully worded statement "that the particular circumstances alleged in the plaintiff's petition do not show a qualified nuisance."

The syllabus and the opinion in *Wall* very definitely imply that a defect in the truck or in the equipment would not have been a nuisance "in the street itself." Since there was no defect in the truck or in the cleaning unit, that implication is dictum. There is no comment in the opinion as to why the statute should be so construed, and the basis for it appears to be the dicta contained in the *Wooster* decision. Two judges dissented on the particular point. One did not participate.

In *Standard Fire Ins. Co.* v. *City of Fremont* (1955), 164 Ohio St. 344, paragraph three of the syllabus provides in part as follows:

"Section 3714, General Code (Section 723.01, Revised Code), * * * is in derogation of the common law and must be strictly construed; and the scope and application of such statutory provisions to streets or highways are limited to conditions affecting the actual physical structure of the streets or highways and to the physical obstructions or hindrances to travel thereon."

By recognizing that obstructions or hindrances may be a nuisance, within the provisions of the statute, the *Standard Fire* case appears to firmly reject the narrow "physical structure only" interpretation suggested by *Wooster* and *Wall* and found in *Farrell-Ellis*. In the opinion, Judge Hart discussed and quoted from the *Wooster case*. Apparently, as his concurring opinion in the *Wall case* suggests, he did not consider the *Wooster case* as even implying that nuisances under the statute were limited to defects in physical structure only.

The comments in *Standard Fire* as to nuisance are also clearly dicta. The case involved damage to a house caused by the fall of a tree located within the right of way but outside the curb line, *i. e.*, between the pavement and the sidewalk. As the opinion states, the real issue was whether Section 723.01, Revised Code, applies to "persons other than those using such street in the ordinary modes of travel." Rather clearly, the court held that the statute applied only to those persons who are entitled to use and are *using* the street or public ground. Since the case involved an abutting owner who was not using the street, the statute did not apply. That the nonuser status of the plaintiff was the controlling factor is made apparent by the later cases of *Crisafi* v. *City of Cleveland* (1959), 169 Ohio St. 137, and *Osborn* v. *City of Akron* (1960), 171 Ohio St. 361. In addition, the court in *Standard Fire* also apparently concluded that the defective tree was not within the *traveled portion* of the street, distinguishing public ground and park cases in that respect. See the *Standard Fire case, supra,* at 353.

The court's apparent recognition in *Standard Fire* that Section 723.01, Revised Code, imposes liability for obstructions

parallels a similar liability placed upon county commissioners under the interpretation of Section 305.12, Revised Code. See *Bales, Admx.,* v. *Board of County Commissioners of Cuyahoga County* (1928), 30 Ohio App. 249; and *Pancake* v. *Wakefield* (1956), 102 Ohio App. 5, motion to certify the record overruled January 23, 1957. Both of these cases involved piles of crushed stone left upon the roadway. The county statute imposes only a duty to keep the street in "repair." By its terms, it is, therefore, much narrower than Section 723.01, Revised Code, which contains the *added* obligation of keeping the streets in repair and "free from nuisance."

Several Supreme Court cases directly conflict with the implications in *Wooster* and *Wall*, or at least with a narrow interpretation of the dicta in those cases. In *City of Cleveland* v. *Ferrando, a Minor* (1926), 114 Ohio St. 207, the court held the city liable for an injury caused by a fireworks bomb found by a child in a city park. It was apparently left over from a fireworks display held the previous day. The bomb could not be considered a defect in the "physical structure" of the park nor even an obstruction to use. It was in fact a nuisance which endangered the safety of the persons using the park. Perhaps it was an "absolute" nuisance and not merely a "qualified" one. However, while that distinction is important for some purposes, we fail to see its relevance to the statutory duty to keep the park free from nuisance.

In *Gottesman, Admr.,* v. *City of Cleveland* (1944), 142 Ohio St. 410, the city was held liable for the death of a child crushed by a corrugated metal pipe about six feet in diameter. Some youths were rocking the pipe in the park, and it apparently rolled onto the child. Here again, there was no defect in the park or in the pipe. The court noted that the city knew that children played with the pipe and rolled it about; that the pipe had become a "dangerous plaything upon public property."

In *Gaines* v. *Village of Wyoming* (1947), 147 Ohio St. 491, a child was shot by a rifle fired by a youth at a rifle range in a park. The range had been constructed and was maintained by the city. There is no suggestion in the case of any defect in the design or maintenance of the range. The court emphasized the illegality of the firing of a weapon inside the city and the

permissive use of the range by children. The injury itself was the result of two factors—the range and the negligence of the youth who fired the rifle.

These three cases show that under Section 723.01, Revised Code: (1) a nuisance within the statute need not be a defect in the physical structure of the street or park, but may include something found upon a street or public grounds; (2) liability may attach for an injury which is caused by a nuisance which is moved or propelled by someone; (3) liability for the nuisance is distinct and severable from that for the concurrent or consecutive negligent conduct of a person using or operating it.

In this case, the city vehicle was permitted upon the streets in a defective and highly dangerous condition. It was operated by an agent of the city so as to cause an injury. Liability for the nuisance as a proximate cause of injury is distinct from liability for the conduct of the person using or operating it. Accordingly, in our opinion, the petition states a cause of action under Section 723.01, Revised Code, and the court was in error in sustaining the demurrer.

The judgment of the Municipal Court is reversed, and the cause remanded for further proceedings according to law.

*Judgment reversed.*

BRYANT, P. J., and TROOP, J., concur.